


McGREGOR W. SCOTT
United States Attorney
SAMANTHA S. SPANGLER
Assistant U.S. Attorney
501 I Street, Suite 10-100
Sacramento, California 95814
Telephone: (916) 554-2792

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:06-440 DFL |
| Plaintiff, | PLEA AGREEMENT |
| v. | |
| BRIAN TYRONE PLEASANT, | DATE: January 25, 2007 |
| Defendant. | TIME: 10:00 a.m. |
| | COURT: Hon. David F. Levi |

I.

**INTRODUCTION**

A. **Scope of Agreement:** The Information in this case charges the defendant with bank fraud. This document contains the complete Plea Agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This Plea Agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

B. **Court Not a Party:** The Court is not a party to this Plea Agreement. Sentencing is a matter solely within the discretion of the Court, the Court is under no obligation to accept any

1  recommendations made by the government, and the Court may in its
2  discretion impose any sentence it deems appropriate up to and
3  including the statutory maximum stated in this Plea Agreement.  If
4  the Court should impose any sentence up to the maximum established
5  by the statute, the defendant cannot, for that reason alone,
6  withdraw his guilty plea, and he will remain bound to fulfill all of
7  the obligations under this Plea Agreement.  The defendant
8  understands that neither the prosecutor, defense counsel, nor the
9  Court can make a binding prediction or promise regarding the
10 sentence he will receive.

## II.

### DEFENDANT'S OBLIGATIONS

13 **A.  Guilty Plea:**  The defendant will plead guilty to the sole
14 count of the Information, charging him with bank fraud, in violation
15 of 18 U.S.C. § 1344.  The defendant agrees that he is in fact guilty
16 of this charge and that the facts set forth in the Factual Basis
17 attached hereto as Exhibit A are accurate.

18     **1.  Waiver of Indictment:**  The defendant agrees that, at
19 the entry of plea proceeding, he will sign a written waiver of
20 prosecution by indictment and consent to proceed by information
21 rather than by indictment.

22 **B.  Restitution:**  The Mandatory Victim Restitution Act requires
23 the Court to order restitution to the victims of certain offenses.
24 In addition to that restitution, the defendant agrees to pay full
25 restitution to the following victims in the amounts below.

| Victim | Amount |
| --- | --- |
| Armed Forces Bank<br>Travis Air Force Base Branch | $21,971.73 |

1  Payment shall be made as directed by the Probation Officer. The
2  defendant further agrees that he will not seek to discharge any
3  restitution obligation or any part of such obligation in any
4  bankruptcy proceeding.

5      **C.  Fine:**  The parties anticipate that the defendant will be
6  found to lack the ability to pay both restitution and a fine.  The
7  defendant agrees to pay restitution, in exchange for the
8  government's agreement to recommend that no fine be imposed.

9      **D.  Special Assessment:**  The defendant agrees to pay a special
10 assessment of **$100.00** at the time of sentencing by delivering a
11 check or money order payable to the United States District Court to
12 the United States Probation Office immediately before the sentencing
13 hearing.  The defendant understands that this Plea Agreement is
14 voidable by the government if he fails to pay the assessment prior
15 to that hearing.

16     **E.  Relinquishment of Military Identification:**  The defendant
17 agrees to relinquish to Air Force Office of Special Investigations
18 Agent Mario Price at the time of his entry of his guilty plea any
19 and all military identification card(s) containing his picture or
20 likeness or name that are in his possession, including on his
21 person; at his place(s) of residence; at his place(s) of employment;
22 in any vehicle under his control; in any safe, vault, or safe
23 deposit box; or in the possession of any other person to whom he has
24 delivered them or caused or allowed them to be delivered or obtained
25 in any manner.  This provision specifically includes, but is not
26 limited to, a military identification showing the defendant to be a
27 Navy Lieutenant Junior Grade.
28 ///

## III.

## THE GOVERNMENT'S OBLIGATIONS

**A. Dismissals:** The government agrees to move, at the time of sentencing, to dismiss without prejudice the remaining count in the pending Complaint. The government also agrees not to reinstate any dismissed count except as provided in Part VII.B of this Plea Agreement.

**B. Recommendations:**

**1. Incarceration Range:** The government will recommend that the defendant be sentenced to the low end of the applicable guideline range for his offense as determined by the United States Probation Office.

**2. Acceptance of Responsibility:** If the United States Probation Office determines that a two-level reduction in the defendant's offense level for his full and clear demonstration of acceptance of responsibility is appropriate under U.S.S.G. § 3E1.1, the government will not oppose such a reduction, so long as the defendant pleads guilty, meets with and assists the probation officer in the preparation of the pre-sentence report, is truthful and candid with the probation officer, and does not otherwise engage in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

**3. Fine:** Because of the likelihood that the defendant is unable to pay both restitution and a fine, the government agrees to recommend that no fine be imposed, in exchange for the defendant's agreement to pay restitution.

///

IV.

**ELEMENTS OF THE OFFENSE**

**A.   Elements of the Offense**:  At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which the defendant is pleading guilty, bank fraud, in violation of 18 U.S.C. § 1344:

First, the defendant knowingly carried out a scheme or plan to obtain money or property from the Armed Forces Bank, Travis Air Force Base Exchange Branch, by making false statements or promises;

Second, the defendant knew that the statements or promises were false;

Third, the statements or promises were material, that is, they would reasonably influence a bank to part with money or property;

Fourth, the defendant acted with the intent to defraud; and

Fifth, the Armed Forces Bank, Travis Air Force Base Exchange Branch, was federally insured.

V.

**MAXIMUM SENTENCE**

**A.   Maximum Penalty**:  The maximum sentence that the Court can impose is **30 years** of incarceration, a fine of **$1,000,000**, a **five-year** period of supervised release and a special assessment of **$100.00**.  By signing this Plea Agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct.  The defendant agrees that the restitution order is <u>not</u> restricted to the amounts alleged in the specific count to which the defendant is pleading guilty.  The defendant further agrees that he will not attempt to

///

5

1  discharge in any present or future bankruptcy proceeding any
2  restitution imposed by the Court.
3      **B.  Violations of Supervised Release:**  The defendant
4  understands that if he violates a condition of supervised release at
5  any time during the term of supervised release, the Court may revoke
6  the term of supervised release and require the defendant to serve up
7  to **three** additional years imprisonment.

## VI.

### SENTENCING DETERMINATION

10     **A.  Statutory Authority:**  The defendant understands that the
11 Court must consult the Federal Sentencing Guidelines (as promulgated
12 by the Sentencing Commission pursuant to the Sentencing Reform Act
13 of 1984, 18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998, and as
14 modified by United States v. Booker and United States v. Fanfan,
15 543 U.S. 220 (2005)) and must take them into account when
16 determining a final sentence.  The defendant understands that the
17 Court will determine a non-binding and advisory guideline sentencing
18 range for this case pursuant to the Sentencing Guidelines.  The
19 defendant further understands that the Court will consider whether
20 there is a basis for departure from the guideline sentencing range
21 (either above or below the guideline sentencing range) because there
22 exists an aggravating or mitigating circumstance of a kind, or to a
23 degree, not adequately taken into consideration by the Sentencing
24 Commission in formulating the Guidelines.  The defendant further
25 understands that the Court, after consultation and consideration of
26 the Sentencing Guidelines, must impose a sentence that is reasonable
27 in light of the factors set forth in 18 U.S.C. § 3553(a).
28 ///

    **B. Stipulations Affecting Guidelines Calculation:** The government and the defendant agree that there is no material dispute as to the following sentencing guidelines variables and therefore stipulate to the following:

    1. **Base Offense Level:** 7 [U.S.S.G. § 2B1.1(a)(1)] +4 [§ 2B1.1(ab)(a)(C)] = **11**

    2. **Victim-related Adjustments:** not applicable

    3. **Role in the Offense Adjustment:** not applicable

    4. **Obstruction Adjustment:** not applicable

    5. **Adjusted Offense Level:** 11

    6. **Acceptance of Responsibility:** -2 (if the defendant qualifies; see paragraph III(B)(2) above)

    7. **Criminal History:** no agreement, but the parties believe that the defendant's Criminal History Category is I

    8. **Departures:** no agreement

    9. **Sentencing Range:** If the defendant's Criminal History Category is I and his Total Adjusted Offense Level is 9, his sentencing range would be 4-10 months in custody, in Zone B.

    10. **Joint Sentencing Recommendation:** The defendant was arrested on or about June 5, 2006 in Georgia, and was released on bond on or about June 29, 2006 in Sacramento, having served approximately 24 or 25 days in custody. In light of the time he has already served, if his Criminal History Category, Total Adjusted Offense Level, and Sentencing Range turn out to be as anticipated above, then the parties jointly recommend that the defendant be placed on formal probation for a period of time recommended by the Probation Office and that home detention be substituted for any remaining period of imprisonment that would

7

otherwise be imposed. As indicated above, the parties also jointly recommend that the defendant be ordered to pay full restitution and that no fine be imposed.

## VII.

## WAIVERS

**A. Waiver of Constitutional Rights:** The defendant understands that by pleading guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to testify on his behalf; (e) to confront and cross-examine witnesses against him; and (f) not to be compelled to incriminate himself.

**B. Waiver of Appeal and Collateral Attack:** The defendant understands that the law gives him a right to appeal his conviction and sentence. He agrees as part of his plea, however, to give up the right to appeal the conviction and the right to appeal any aspect of the sentence imposed in this case so long as his sentence is no longer than the top of the Sentencing Guidelines range determined by the Court consistent with the stipulations set forth above about the Sentencing Guidelines variables (that is, a total adjusted offense level of **9** or below). He specifically gives up his right to appeal any order of restitution the Court may impose.

The defendant also gives up any right he may have to bring a post-conviction attack on his conviction or his sentence. He specifically agrees not to file a motion under 28 U.S.C. § 2255 or § 2241 attacking his conviction or sentence.

///

Notwithstanding the agreement in part III.A above that the government will move to dismiss counts against the defendant, if the defendant ever attempts to vacate his plea, dismiss the underlying charges, or reduce or set aside his sentence on any of the counts to which he is pleading guilty, the government shall have the right (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this Plea Agreement; and (3) to file any new charges that would otherwise be barred by this Plea Agreement.  The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.  By signing this Plea Agreement, the defendant agrees to waive any objections, motions, and defenses he might have to the government's decision.  In particular, he agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

**C.  Waiver of Attorneys' Fees and Costs:**  The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this Plea Agreement and any charges previously dismissed).

**D.  Waiver of DNA Testing**

The defendant understands that, before entering a guilty plea pursuant to this Plea Agreement, he could request DNA testing of

1  evidence in this case.  The defendant further understands that, with
2  respect to the offense to which he is pleading guilty pursuant to
3  this Plea Agreement, he would have the right to request DNA testing
4  of evidence after conviction under the conditions specified in 18
5  U.S.C. § 3600.  Knowing and understanding his right to request DNA
6  testing, the defendant knowingly and voluntarily gives up that right
7  with respect to any items of evidence there may be in this case that
8  might be amenable to DNA testing.  The defendant understands and
9  acknowledges that by giving up this right, he is giving up any
10 ability to request DNA testing of evidence in this case in the
11 current proceeding, in any proceeding after conviction under 18
12 U.S.C. § 3600, and in any other proceeding of any type.  The
13 defendant further understands and acknowledges that by giving up
14 this right, he will never have another opportunity to have the
15 evidence in this case submitted for DNA testing, or to employ the
16 results of DNA testing to support a claim that he is innocent of the
17 offense to which he is pleading guilty.

## VIII.

### ENTIRE PLEA AGREEMENT

20 Other than this Plea Agreement, no agreement, understanding,
21 promise, or condition between the government and the defendant
22 exists, nor will such agreement, understanding, promise, or
23 condition exist unless it is committed to writing and signed by the
24 defendant, counsel for the defendant, and counsel for the United
25 States.
26 ///
27 ///
28 ///

IX.

APPROVALS AND SIGNATURES

A. **Defense Counsel:** I have read this Plea Agreement and have discussed it fully with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this Plea Agreement.

DATED: 1/25/07

Ned Smock
Assistant Federal Defender
Attorney for Defendant

B. **Defendant:** I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. In addition, no one has threatened or forced me in any way to enter into this Plea Agreement. Finally, I am satisfied with the representation of my attorney in this case.

DATED: 1/25/07

BRIAN TYRONE PLEASANT, Defendant

C. **Attorney for United States:** I accept and agree to this Plea Agreement on behalf of the government.

DATED: 1/25/07

McGREGOR W. SCOTT
United States Attorney

By: SAMANTHA S. SPANGLER
Assistant U.S. Attorney

11

**EXHIBIT "A"**

**Factual Basis for Plea**

If this case were to proceed to trial, the government would prove the following beyond a reasonable doubt:

Between on or about April 11, 2005, and on or about May 1, 2006, defendant Brian Tyrone Pleasant entered the Travis Air Force Base Exchange branch of the Armed Forces Bank and negotiated approximately 74 personal checks. Approximately 67 of the checks were in the amount of $300.00, and the remaining approximately 6 checks ranged in amount from as little as $71.18 to as much as $398.56. Approximately 59 of the checks were written on a personal checking account the defendant had opened through Montgomery County Teachers Federal Credit Union. Approximately 15 of the checks were written on a personal checking account the defendant had opened through Sun Trust Bank.

All of the checks were drawn on closed bank accounts, which the defendant knew were closed and contained no funds to cover the amounts of the checks. By presenting the checks to the bank, the defendant represented the checks to be legitimate checks on open accounts with sufficient funds to cover the small amounts of money on the faces of the checks. Neither the Montgomery County Teachers Federal Credit Union nor the Sun Trust Bank honored any of the checks. As a result of the Armed Forces Bank's reasonable reliance upon the defendant's material misrepresentations that the checks were good, the Armed Forces Bank has suffered losses of approximately $21,971.73.

The Armed Forces Bank, Travis Air Force Base Exchange Branch, requires a person who wishes to cash a check to furnish picture identification, which is verified by the employee negotiating the transaction.

All of the checks contained the defendant's name, address, and telephone number. The addresses listed on the checks match residences listed by the defendant on various paperwork in his Naval records. The cellular telephone service provider for the telephone number on the checks confirms that the number was issued to the defendant, and he provided the service provider with a billing address and social security number that his Naval records also associate with him.

Air Force Office of Special Investigations Agent Mario Price has viewed videotapes which show a person who appears to be the defendant cashing checks at the Travis Air Force Base Exchange Branch of the Armed Forces Bank on dates the defendant's checks were negotiated.

The Armed Forces Bank, Travis Air Force Base Exchange Branch, was and is insured by the Federal Deposit Insurance Corporation.

1